# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| **FELICIA CASPER,** | ) |
| **Plaintiff,** | ) |
| v. | ) Case No.: 3:24-cv-1282-LCB |
| **FRANK BISIGNANO,**[1] | ) |
| *Commissioner, Social Security Administration*, | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

On September 20, 2024, Claimant Felicia Casper filed a complaint seeking judicial review of an adverse decision of the Commissioner of the Social Security Administration ("the Commissioner") pursuant to 42 U.S.C. § 405(g). (Doc. 1). The Commissioner filed an answer and a copy of the administrative record on November 12, 2024. (Doc. 4). Casper filed a brief in support of her position on December 12, 2024, and the Commissioner filed a response on February 21, 2025. (Docs. 6, 13). Casper did not file a reply brief. Accordingly, the issues are now fully briefed, and Casper's case is ripe for review. For the reasons below, the Commissioner's final decision is due to be affirmed.

---

[1] Originally Casper sued Martin O'Malley, the then Acting Commissioner of Social Security. However, pursuant to Federal Rule of Civil Procedure 25(d), Frank Bisignano has been substituted as the Defendant.

## I.     BACKGROUND

On December 21, 2021, Casper filed an application for a period of disability and disability insurance benefits, alleging disability beginning on October 15, 2017. (Tr. 59, 197–200). Casper subsequently amended her alleged disability onset date of September 15, 2020. (Tr. 38, 319). These claims were denied initially on November 3, 2021, and denied again upon reconsideration on May 9, 2023. (Tr. 78–82, 91–94). Thereafter, Casper requested a hearing before an Administrative Law Judge. Judge Sherrill Carvalho ("the ALJ") held a telephone hearing on January 4, 2022. (Tr 35–58). An impartial vocational expert ("VE") testified at this hearing.  (*See* Tr. 37). The ALJ subsequently issued an unfavorable decision on March 22, 2024. (Tr. 7–23). Though Casper sought review by the Appeals Council, this request was denied and the ALJ's decision became the Commissioner's final decision. (Tr. 1–6). This lawsuit followed.

## II.    THE ALJ'S DECISION

After the hearing, the ALJ issued a written opinion explaining her decision. (Tr. at 10–18). In issuing her decision, the ALJ followed the five-step evaluation process set out by the Social Security Administration. *See* 20 CFR 416.920(a). The steps are followed in order and, if it is determined that the claimant is or is not disabled at a particular step of the evaluation process, the ALJ will not proceed to the next step.

The first step requires the ALJ to determine whether the claimant is engaging in substantial gainful activity, which is defined as work involving significant physical or mental activities usually done for pay or profit. If a claimant is engaged in substantial gainful activity, she is not disabled, and the inquiry stops. Otherwise, the ALJ will proceed to step two. In the present case, the ALJ found that Casper did not engage in substantial gainful activity during the relevant time period, September 15, 2020 through December 31, 2021. (Tr. at 12). Accordingly, the ALJ moved on to the second step of the evaluation.

At step two, an ALJ is to determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 C.F.R. 416.920(c). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities . . . ." *Id*. If a claimant does not have a severe impairment, she is not disabled, and the inquiry ends. If she does have a severe impairment, the ALJ will proceed to the third step. In the present case, the ALJ found that Casper had the following severe impairments: "spondylosis of the cervical, thoracic and lumbar spine, diabetes, neuropathy and obesity." (Tr. at 12 (citing 20 CFR 404.1520(c))).

At the third step, an ALJ determines whether the claimant's impairments or combination thereof are of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix I. If the claimant's

impairment or impairments meet or equal a listed impairment, then the claimant is disabled, and the evaluation ends. Otherwise, the ALJ proceeds to the next step. In this case, the ALJ found that Casper's impairments did not meet or equal any of the listed criteria. (Tr. 15). Specifically, the ALJ reviewed listings for musculoskeletal disorders and neurological disorders as well as Casper's unlisted diabetes and obesity. (*Id.* (citing to listings 1.15, 1.16, and 11.14). After reviewing the evidence, the ALJ concluded that there was no evidence of medical findings that were the same or equivalent to any of the listed impairments. (*Id.*). Therefore, the ALJ proceeded to step four.

    Step four of the evaluation requires an ALJ to first determine the claimant's residual functional capacity ("RFC"), and whether she has the RFC to perform the requirements of any past relevant work. 20 C.F.R. 416.920(f). The term "past relevant work" means work performed within the last 15 years prior to the alleged date of onset. If a claimant has the RFC to perform past relevant work, she is not disabled, and the evaluation stops. Otherwise, the evaluation proceeds to the final step. In Casper's case, the ALJ found that she had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with specific limitations:

> The claimant could occasionally balance, stoop, kneel, crouch, crawl, climb ramps/stairs, and climb ladders, ropes or scaffolds. She could frequently handle and finger with the bilateral upper extremity. The claimant should avoid concentrated exposure to extreme heat and extreme cold. She should avoid unprotected heights, dangerous moving machinery, open flames and large open bodies of water.

4

(Tr. 14–17). Given this RFC, the ALJ determined that Casper was able to perform her past relevant work as an outside deliverer or shipping and receiving clerk given that such work would not require Casper to perform work-related activities precluded by her RFC. (Tr. 17–18). This finding was based in part on testimony from a vocational expert who testified at Casper's hearing. Based on the findings above, the ALJ determined that Casper was not disabled as defined by the Social Security Administration. (Tr. 18).

### III.  Standard of Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. *Winschel v. Comm'r of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (internal citation and quotation marks omitted). "This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Thus, while the Court must scrutinize the record as a whole, the Court also must affirm if the decision is supported by substantial evidence, even if the evidence preponderates against the Commissioner's findings. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264 (11th Cir. 2015); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

Additionally, in order

> [t]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test by showing (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Zuba-Ingram v. Commissioner of Social Security*, 600 Fed. Appx. 650, 656 (11th Cir. 2015) (quoting *Booth v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002)). If the claimant establishes that she has an impairment which could reasonably be expected to produce her alleged symptoms, then the intensity and persistence of her alleged symptoms and their effect on her ability to work must be evaluated. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). The Eleventh Circuit has recognized that the Commissioner's regulation at 20 C.F.R. § 404.1529 is consistent with the Eleventh Circuit's pain standard, and the ALJ need not quote the pain standard verbatim as long as the ALJ applies it. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

When evaluating a claimant's statements regarding the intensity, persistence or limiting effects of her symptoms, ALJs consider all the evidence, objective and subjective. 20 C.F.R. §§ 404.1529, 416.929. ALJs may consider the nature of the claimant's symptoms, the effectiveness of medication, a claimant's treatment, a claimant's daily activities, measures a claimant takes to relieve symptoms, and any conflicts between the claimant's statements and other evidence. 20 C.F.R. §§

6

404.1529(c)(3)–(4), 416.929(c)(3)–(4). A court "will not disturb a clearly articulated" finding about subjective complaints supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

### IV. Casper's Arguments

Casper presents a single issue for the Court's review: "Whether the ALJ failed to properly evaluate the credibility of the Plaintiff's complaints of pain consistent with the Eleventh Circuit Pain Standard." (Doc. 9 at 6). Casper argues that the ALJ misunderstood, mischaracterized, and misanalysed the record and failed to properly consider her subjective complaints so that substantial evidence does not support the ALJ's finding that Casper could perform light work. (Doc. 6 at 5–12).

The ALJ acknowledged that Casper's medically determinable impairments could reasonably be expected to produce the alleged symptoms. (Tr. 15). However, she found Casper's statements regarding the intensity, persistence, and limiting effects of her symptoms were inconsistent with the medical and other evidence in the record. (*Id.*).

"[T]here is [simply] no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Mitchell,* 771 F.3d at 782 (quoting *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005))

7

(internal quotation marks omitted). Though Casper is correct that an ALJ may not simply "pick and choose among a doctor's records to support [her] own conclusion," *Chambers v. Astrue*, 671 F. Supp. 2d 1253, 1258 (N.D. Ala. 2009), the ALJ analyzed the medical records and provided substantial evidence in support of her determination that was disparity between the objective medical records and Casper's subjective complaints. (*See Truesdell v. Comm'r of Soc. Sec.*, No. 20-13416, 2022 WL 401548, at *6 (11th Cir. Feb. 10, 2022) (holding that the ALJ identified inconsistencies with Plaintiff's allegations and the evidence by considering Plaintiff's medical condition and supporting her assessment with citations to the Plaintiff's medical records and treatment history, amongst other factors)).

Casper argues that "[t]he ALJ's rationale to support her determination is not based upon substantial evidence and . . . is based on analysis of isolated treatment records" either "ignor[ing], overlook[ing] or misconstru[ing] [those] records which are consistent with [Casper's] allegations of debilitating limitations." (Doc. 6 at 7–8). In support of this proposition, Casper points to the record itself, stating that the ALJ cherry-picked records and "failed to consider the subsequent records for the relevant period which clearly demonstrate the Plaintiff's neck pain returned." (*Id.* at 8–9 (citing Tr. 434, 440, 445, 451, 453, 456, 461, 466, 471, 476, 481, 486, 491, 496, 501)). However, the ALJ's decision references a litany of findings and reports from treating providers, not just a few isolated records. (Tr. 14–17). To demonstrate the

ALJ's failure to consider the totality of the record, Casper largely cites to evidence directly discussed by the ALJ, including "examination findings and imaging studies, as well as [Casper's] subjective reports to her treating providers regarding her pain and history of falls. (Doc. 13 at 14 (citing Doc. 6 at 8–12)). However, the ALJ not only considered Casper's subjective complaints in her discussion of the record, but specifically accounted for them when determining Casper's RFC of light work. (*Id.*).

Casper asserts that "[t]he ALJ dismissed the significance of the treating records and objective medical evidence" demonstrating how her "rationale and characterization of the record is not supported by substantial evidence." (Doc. 6 at 10). But even the records Casper cites fail to demonstrate this proposition, and instead show that the ALJ properly assessed the objective evidence in the record and simply came to a different conclusion as to how the relevant medical records interacted.

Even while disagreeing with Casper's subjective complaints, the ALJ provided a thorough assessment of Casper's symptoms from pre-cervical spine impairment surgery through her post-surgery care. The ALJ noted that Casper's treatment did not include "additional treatment such as physical therapy, injections or surgical intervention" and resulted in a "normal gait, full muscle strength in all extremities and decreased sensation to vibration in bilateral lower extremities . . .

9

[and her] chronic neck pain was intermittent, stable and improved on pain medication." (Tr. 15–16).

In support of her mischaracterization argument, Casper argues that the record demonstrates that she could not perform light work. Specifically, she cites the x-ray of her lumbar spine which evidenced mild spondylosis, decreased sensation in her lower extremities and neuropathy, and continuous reports of falls from 2020 to 2021 and from 2023. (Doc. 6 at 10–11 (citing Tr. 331, 434, 436, 440, 442,445, 448, 451, 453, 458, 463, 468, 473, 478, 483, 488, 493, 498, 503, 571)). However, even if the exact records were not discussed ad nauseum, the ALJ still properly accounted for the medical evidence contained within. For example, the ALJ recognized that Casper's medication was "relatively effective in controlling" her neuropathy. Additionally, the ALJ ruled that Casper should have limited exposure to environmental hazards due to her allegations of instability and impaired balance. (*See* Tr. 16–17).

This Court views Casper's argument as a request for it to reweigh the evidence presented to the ALJ. Itis not this Court's role to "decide facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner" and must affirm if substantial evidence supports the ALJ's decision. *Mitchell*, 771 F.3d at 782.

The Court finds that the ALJ cites properly considered Casper's subjective complaints and weighed them against the objective records so that the ALJ's decision was demonstrably supported by substantial evidence. (*See* Tr. at 14-17, 24).

Accordingly, the Commissioner's decision is **AFFIRMED**.

**DONE** and **ORDERED** August 27, 2025.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE